UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **EMPLOYERS MUTUAL CASUALTY COMPANY** | **CIVIL ACTION** |
| | **NO. 18-1015** |
| **VERSUS** | |
| | **JUDGE  SDD** |
| **FIVE STAR INDUSTRIAL, LLC,** **FIVE S INDUSTRIAL, LLC, J. LAWTON COMPANY, LLC and** **WILLIAM B. LAWTON FAMILY LIMITED PARTNERSHIP** | **MAGISTRATE EWD** |

### SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. §2201[1]

   **NOW INTO COURT,** through undersigned counsel, comes Employers Mutual Casualty

Company ("EMC"), who brings this Second Amended Complaint for Declaratory Judgment

Pursuant to 28 U.S.C. §2201, seeking a declaration of rights and obligations on the part of EMC

based on claims asserted against EMC's insureds, Five Star Industrial, LLC (individually "Five

Star Industrial") and Five S Industrial, LLC (individually "Five S Industrial") (sometimes

collectively "Five Star"), in the lawsuit entitled *"J. Lawton Company, LLC and William B.*

---

[1] This Second Amended Complaint for Declaratory Judgment Pursuant to 28 U.S.C. §2201 is filed pursuant to United States Magistrate Judge Erin Wilder-Doomes' Notice and Order dated December 17, 2018, requiring that within 14 days EMC substitute its original Complaint for Declaratory Judgement with a Second Amended Complaint for Declaratory Judgment to more thoroughly allege the citizenship of the Defendants J. Lawton Company, LLC and William B. Lawton Family Limited Partnership.

1

*Lawton Family Limited Partnership v. Five Star Industrial, LLC and Five S Industrial, LLC"*, pending in the 14th Judicial District Court for the Parish of Calcasieu, State of Louisiana, docket no. 2018-1470, Division "F" ("Lawsuit").[2]

**PARTIES**

1.

Plaintiff, EMC, is an insurer organized and existing under the laws of the State of Iowa, with its principal place of business in Des Moines, Iowa.

2.

Defendant, Five S Industrial, LLC, is a Louisiana limited liability company with its principal place of business in Baton Rouge, Louisiana. Upon information and belief, per the Articles of Organization, the Limited Liability Company Initial Report, the Name Change Amendment, the Notice of Change and the Limited Liability Company Annual Report, all on file with the Louisiana Secretary of State, the "Members" of Five S Industrial, LLC were or are:

a) Andre Smith, who upon information and belief is a citizen of Louisiana with a listed address of 20269 Highland Road, Baton Rouge, Louisiana 70817;

b) Joe Cline, III, who upon information and belief is a citizen of Louisiana with a listed address of 20269 Highland Road, Baton Rouge, Louisiana 70817; and

c) Five S Group, LLC[3], a Louisiana Limited Liability Company with its principal place of business in Baton Rouge, Louisiana.

---

[2] The Lawsuit is attached hereto as Exhibit "A".

[3] The Louisiana Secretary of State lists Five S Group, LLC as having its principal place of business in Baton Rouge, Louisiana.  The only listed "Member" of Five S Group, LLC is Andre Smith, LLC, 20269 Highland Road, Baton

3.

Defendant, Five Star Industrial, LLC, was a Louisiana limited liability company with its principal place of business in Port Allen, Louisiana.  Upon information and belief, per the Louisiana Secretary of State, Five Star Industrial, LLC changed its name to Five S Industrial, LLC on May 19, 2016.  According to the Articles of Organization, the Limited Liability Company Initial Report and the Notice of Change, all on file with the Louisiana Secretary of State, prior to its name change on May 19, 2016, the "Members" of Five Star Industrial, LLC were:

a)  Andre Smith, who upon information and belief is a citizen of Louisiana with a then listed address of 1913 West Shore Avenue, Suite B, Port Allen, Louisiana 70767; and

b)  Joe Cline, III, who upon information and belief is a citizen of Louisiana with a then listed address of 16139 Feliciana Avenue, Prairieville, Louisiana 70769.

4.

Defendant, J. Lawton Company, LLC, is a Louisiana limited liability company with its principal place of business in Lake Charles, Louisiana. Per the Articles of Organization, the December 22, 2005 Initial Report By Domestic Limited Liability Company and the November 26, 2018 Limited Liability Company Annual Report, all on file with the Louisiana Secretary of State, and based on other information publicly available, upon information and belief, the "Members" of J. Lawton Company, LLC are believed to be:

---

Rouge, Louisiana 70817.  Andre Smith, LLC is a Louisiana limited liability company with its principal place of business in Baton Rouge, Louisiana.  Andre Smith is the only listed "Member" of Andre Smith, LLC. Upon information and belief, Andre Smith is a citizen of Louisiana with a listed address of 20269 Highland Road, Baton Rouge, Louisiana 70817.

a) Jack E. Lawton, Jr., who upon information and belief is a citizen of Louisiana with a listed address of 1450 William Street, Lawton Building, 2nd Floor, Lake Charles, Louisiana 70601;

b) Holly B. Lawton, who upon information and belief is a citizen of Louisiana with a listed address of 1450 William Street, Lawton Building, 2nd Floor, Lake Charles, Louisiana 70601;

c) Candace Lawton Scroggs, who upon information and belief is a citizen of Louisiana with a listed address of 1450 William Street, Lawton Building, 2nd Floor, Lake Charles, Louisiana 70601; and

d) Jacob Burton Lawton, who upon information and belief is a citizen of Louisiana with a listed address of 1450 William Street, Lawton Building, 2nd Floor, Lake Charles, Louisiana 70601.

5.

Defendant, William B. Lawton Family Limited Partnership, is a Texas limited partnership with its principal place of business in Lake Charles, Louisiana.  Upon information and belief, and according to the last currently available information on file with the Louisiana Secretary of State[4] and the Texas Secretary of State, the "Partners" of the William B. Lawton Family Limited Partnership are:

---

[4] According to the "Foreign Partnership Annual Report" dated November 7, 2017 filed with the Louisiana Secretary of State, the only "Partner" of the William B. Lawton Family Limited Partnership is now WTD, LLC.

a)  WTD, LLC, a Louisiana limited liability company with its principal place of business in Lake Charles, Louisiana, 641 W. Prien Lake Road, Lake Charles, Louisiana 70601[5]; and

b)  Burtlaw, LLC, 641 W. Prien Lake Road, Lake Charles, Louisiana 70601[6];

## JURISDICTION AND VENUE

6.

This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332, as the parties are completely diverse and the amount in controversy exceeds $75,000.00, exclusive of interest and cost.

7.

This Court has personal jurisdiction over Defendants because, at all times relevant to this litigation, the Defendants were citizens of Louisiana and/or were doing business within the State of Louisiana and within the territorial jurisdiction of the United States District Court for the Middle District of Louisiana.

---

[5] WTD, LLC is a Louisiana limited liability company with its principal place of business in Lake Charles, Louisiana. According to the Articles of Organization, the Initial Report of WTD, LLC and the Notice of Change, all on file with the Louisiana Secretary of State, the only listed "Member" of WTD, LLC is William T. Drost, 641 W. Prien Lake Road, Lake Charles, Louisiana 70601. Upon information and belief, Mr. William T. Drost is a citizen of Louisiana.

[6] Burtlaw, LLC, was a Louisiana limited liability company with its principal place of business in Lake Charles, Louisiana. According to the Articles of Organization on file with the Louisiana Secretary of State, the sole "Member" of Burtlaw, LLC was William B. Lawton, One Lakeshore Drive, Suite 1700, Lake Charles, Louisiana 70629. Upon information and belief, Mr. William B. Lawton was a citizen of Louisiana, with a listed address of 641 West Prien Lake Road Lake Charles, LA 70601.  On or about June 30, 2016, an Affidavit of Dissolution was filed with the Louisiana Secretary of State and Burtlaw, LLC is now listed as "Inactive", "Voluntary Action."

8.

Venue is proper in the United States District Court for the Middle District of Louisiana pursuant to 28 U.S.C. §1391(a)(c).

**BACKGROUND**

9.

On or about April 9, 2018, J. Lawton Company, LLC and William B. Lawton Family Limited Partnership (sometimes collectively "Lawton") filed suit against Five Star in the action entitled *"J. Lawton Company, LLC and William B. Lawton Family Limited Partnership v. Five Star Industrial, LLC and Five S Industrial, LLC"*, pending in the 14th Judicial District Court for the Parish of Calcasieu, State of Louisiana, docket no. 2018-1470, Division "F".[7]

10.

In the Lawsuit, Lawton alleges it owns property in Calcasieu Parish, Louisiana, and that on October 1, 2015 and January 15, 2017 it entered into written contracts with Five Star which gave Five Star the right to create, manage, operate and maintain a "borrow site" on the property. These written contracts were allegedly known as "Borrow Site Agreements."[8]

11.

Lawton alleges these "Borrow Site Agreements" obligated Five Star "…to perform all excavations in accordance with proper engineering principles", and that upon termination of the "Borrow Site Agreements" Five Star was obligated to "…(1) demolish and remove all

---

[7] See, Exhibit "A".
[8] See, Exhibit "A", ¶¶ 2, 3, 4.

infrastructure erected at the site; (2) dismantle and remove all utility service from the site; (3) remove roadways and staging areas made specifically for the borrow site activities and restore these areas to ensure the regrowth of vegetation…; (4) remove all foreign materials from the site; (5) remove any and all waste from the site and dispose of it at an approved landfill; (6) install permanent drainage works and erosion protection measures; (7) install, repair or replace the fence around the perimeter of the property…; and (8) restore the property to pre-project conditions, but without the requirement to fill the borrow site.[9]

12.

Lawton specifically alleges Five Star was responsible for investigating, monitoring and remediating all environmental damage, including damage to wetlands, and that Five Star agreed to indemnify Lawton against losses, expenses or liabilities arising from Five Star's breach of the "Borrow Site Agreements", "…including any orders or investigations of a public body or agency."[10]

13.

Lawton alleges that on April 10, 2017, the United States Army Corps of Engineers, Enforcement Section ("USACOE") issued a "Cease and Desist Order" to Lawton and Five Star alleging a violation of Section 301 of the Clean Water Act.  Lawton alleges that as a result of this Cease and Desist Order, all activities involving the property were "halted" and that the USACOE is now requiring that the property be restored to its "natural condition."[11]

---

[9] See, Exhibit "A", ¶¶ 5, 8.
[10] See, Exhibit "A", ¶¶ 9, 11.
[11] See, Exhibit "A", ¶ 12.

14.

In the Lawsuit, Lawton alleges Five Star failed to properly inspect the property prior to starting work, failed to obtain the necessary permits and USACOE wetlands delineations, failed to act in accordance with proper engineering principals, failed to act as a reasonably prudent operator, conducted unauthorized activities, failed to adhere to customary practices, etc.[12]

15.

Lawton alleges that as a result of Five Star's breach of contract, tortious conduct and violation of law, it sustained damages for the costs to evaluate and restore the property, diminution in value of the property, lost revenues, exposure to potential liability to the government and others, attorney's fees and other losses and damages.[13]

**THE EMC POLICIES**

16.

EMC issued Commercial General Liability policies, policy no. 5D3-23-74, to Five Star Industrial, LLC and/or Five S Industrial, LLC for the policy periods 7/10/15 - 7/10/16, 7/10/16 - 7/10/17 and 7/1017 - 7/10/18.[14]

---

[12] See, Exhibit "A", ¶ 14.
[13] See, Exhibit "A", ¶¶ 15, 17.
[14] The CGL policies are attached hereto as Exhibits "B", "C" and "D", respectively.

17.

Additionally, EMC issued Commercial Umbrella policies, policy no. 5J3-23-74, to Five Star Industrial, LLC and/or Five S Industrial, LLC for the policy periods 7/10/15 - 7/10/16, 7/10/16 - 7/10/17 and 7/1017 - 7/10/18.[15]

18.

In relevant part, the EMC policies, as amended, provide as follows:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.  Insuring Agreement**[16]

    **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

---

[15] The Umbrella policies are attached hereto as Exhibits "E", "F" and "G", respectively.

[16] The **Insuring Agreement** of the Umbrella policy, policy no. 5J3-23-74, provides:

**SECTION I - COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

    **1.  Insuring Agreement**

        **a.**  We will pay on behalf of the insured the "ultimate net loss" in excess of the retained limit because of "bodily injury" or property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of underlying insurance have been exhausted. We will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply.  At our discretion, we may investigate any occurrence that may involve this insurance and settle any resultant claim or "suit" for which we have the duty to defend. But: …

                ***

        **b.**  This insurance applies to "bodily injury" and "property damage" only if:

                ***

          (2)  The "bodily injury" and "property damage" is caused by an "occurrence" that takes place during the policy period.

1) The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage **A** or **B** or medical expenses under Coverage **C**.  However, using up the Medical Expense Limit does not end our right and duty to defend.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverage **A** and **B**.

*** 

**b.** This insurance applies to "bodily injury" and "property damage" only if:

1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

2) The "bodily injury" or "property damage" occurs during the policy period; and

3) Prior to the policy period, no insured listed under Paragraph **1.** of Section **II**. . . knew that the "bodily injury" or "property damage" had occurred, in whole or in part . . .

## 2. Exclusions

This insurance does not apply to:

### b. Contractual Liability[17]

"Bodily Injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

1) That the insured would have in the absence of the contract or agreement; or

2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for the purposes of liability assumed in an

---

[17] Appears in Umbrella policy as Exclusion b.

"insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

a)   Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

b)   Such attorney's fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**f.  Pollution**[18]

1)   "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a)   At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured…
*** 

b)   At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

c)   Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i)    Any insured; or
(ii)   Any person or organization for whom you may be legally responsible; or

d)   At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought

---

[18] Appears in Umbrella Policy as Exclusion i.

on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor…

***

    e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

2) Any loss, cost or expense arising out of any:

    a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement or such claim or "suit" by or on behalf of a governmental authority.

**j.  Damage To Property**[19]

"Property damage" to:

1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization, or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

---

[19] Appears in Umbrella Policy as Exclusion m.

*** 

5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

6) That particular part of any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it.

***

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**k.  Damage to Your Product**[20]

"Property damage" to "your product" arising out of it or any part of it.

**l.  Damage to Your Work**[21]

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.  Damage to Impaired Property or Property Not Physically Injured**[22]

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

---

[20] Appears in Umbrella Policy as Exclusion n.
[21] Appears in Umbrella Policy as Exclusion o.
[22] Appears in Umbrella Policy as Exclusion p.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

## REQUEST FOR DECLARATORY RELIEF[23]

**CLAIM # 1**              *EMC Has No Duty to Defend Or Indemnity Five Star Because Lawton's Allegations Do Not Constitute An "Occurrence" Under the EMC Policy*

19.

EMC restates and realleges paragraphs 1 through 18 of its Complaint for Declaratory Judgment, as if fully set forth herein.

20.

Lawton's allegations against Five Star do not constitute an "occurrence" within the EMC policy language. The subject policy only covers "property damage" caused by an "occurrence." The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

21.

Lawton's allegations that Five Star failed to properly inspect the property prior to starting work, failed to obtain the necessary permits and USACOE wetlands delineations, failed to act in accordance with proper engineering principals, failed to act as a reasonably prudent operator, conducted unauthorized activities, failed to adhere to customary practices, etc., do not give rise

---

[23] EMC reserves its right to amend this pleading in order to assert new and/or additional Requests for Declaratory Relief as the litigation progresses and additional facts are discovered.

to insurance coverage or protection from EMC since these acts may be construed as intentional, breach of contract, or something other than accidental and therefore not an "occurrence" under the policy.

22.

Based upon the allegations in the Lawsuit, EMC specifically avers that without an "occurrence" there is no insurance coverage or protection owed to Five Star from EMC.

**CLAIM # 2**        *EMC Has No Duty To Defend Or Indemnify Five Star Industrial, LLC Relating To Any Damages That Occurred After July 10, 2016*

23.

EMC restates and realleges paragraphs 1 through 18 of its Complaint for Declaratory Judgment, as if fully set forth herein.

24.

Lawton alleges that Five Star entered into the "Borrow Site Agreements" on October 1, 2015 and January 15, 2017, and that Five Star's work on the property was "halted" on April 10, 2017 when the USACOE issued its Cease and Desist Order.[24]

---

[24] See, Exhibit "A", ¶ 12.

25.

The EMC policies issued to the specific named insured, Five Star Industrial, LLC, cover only the periods 7/10/15 - 7/10/16, and according to the EMC policy language, coverage is only provided to the named insured for "property damage" which "occurs" during the "policy period."[25]

26.

With respect to any "property damage" caused by an "occurrence" after July 10, 2016, to the extent Five Star Industrial, LLC is not a named insured EMC provides no insurance coverage or protection to Five Star Industrial, LLC.

27.

Additionally, EMC specifically avers there is no insurance coverage or protection pursuant to application of the aforementioned terms, conditions, limitations and exclusions of the EMC policies.

**CLAIM #3**                    *EMC Has No Duty To Defend Or Indemnify Five Star Pursuant To Exclusions 2(j)(5) And/Or 2(j)(6) Of The EMC Policy[26]*

28.

EMC restates and realleges paragraphs 1 through 18 of its Complaint for Declaratory Judgment, as if fully set forth herein.

---

[25] See generally, Exhibits "B" and "E".
[26] Exclusion m of the Umbrella policy.

29.

Exclusion to 2(j)(5) of the EMC policy excludes insurance coverage for "property damage" to "…that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations…"

30.

Exclusion 2(J)(6) of the EMC policy excludes insurance coverage for "property damage" to "…that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it." However, this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

31.

Lawton alleges Five Star caused damage to its "real property" on which Five Star was working or performing operations" pursuant to the "Borrow Site Agreements", and that the work of Five Star was "halted" by the USACOE's April 10, 2017 Cease and Desist letter.[27]

32.

Pursuant to Exclusions 2(j)(5) and/or 2(j)(6), EMC provides no insurance coverage or protection to Five Star for "property damages" to "real property", or "property that must be

---

[27] See, Exhibit "A", ¶¶ 12, 15, 17.

17

restored, repaired or replaced because [Five Star's] work was incorrectly performed on it", that "occurred" either while Five Star's work at the property was in "process" or which "occurred" when Five Star's work not yet "completed."

33.

Based upon the allegations in the Lawsuit, Exclusions 2(j)(5) and/or 2(j)(6) apply to exclude insurance coverage or protection to Five Star because the damages alleged by Lawton "occurred" either while Five Star's work on the property was in process, or "occurred" when Five Star's work on the property was "halted" and thus not yet "completed."

34.

Additionally, EMC specifically avers there is no insurance coverage or protection pursuant to application of the aforementioned terms, conditions, limitations and exclusions of the EMC policies.

**CLAIM #4**                          ***EMC Has No Duty To Defend Or Indemnify Five Star Pursuant To Exclusion 2(j)(1) Of The EMC Policy[28]***

35.

EMC restates and realleges paragraphs 1 through 18 of its Complaint for Declaratory Judgment, as if fully set forth herein.

---

[28] Exclusion m of the Umbrella policy.

36.

Exclusion 2(j)(1) of the EMC policy excludes insurance coverage for "property damage" to "…property you own, rent or occupy, including any costs or expense incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property."

37.

Lawton alleges that, pursuant to the "Borrow Site Agreements", Five Star had the right to "…operate and manage a borrow site" on the property, had the right to construct improvements on the property, and had the right to limit access to the property.[29]

38.

Based upon the allegations in the Lawsuit, the EMC policy affords no insurance coverage or protection to Five Star relating to damages to property owned, rented by, or occupied by Five Star.  Since Five Star "rented" or "occupied" the property in question, exclusion to 2(j)(1) of the EMC policy excludes insurance coverage and protection for the "property damage" at issue in this case.

---

[29] See, Exhibit "A", ¶¶ 3, 4, 7.

39.

Additionally, EMC specifically avers there is no insurance coverage or protection pursuant to application of the aforementioned terms, conditions, limitations and exclusions of the EMC policies.

**CLAIM #5**                    *EMC Has No Duty To Defend Or Indemnify Five Star Pursuant To Exclusions 2(k) And/Or 2(l) Of The EMC Policy*[30]

40.

EMC reiterates and realleges paragraphs 1 through 18 of its Complaint for Declaratory Judgment, as is fully set forth herein.

41.

Exclusions 2(k) and 2(l) of the EMC policy exclude damages for "property damage" to "your product" arising out of it or any part of it, and "property damage" to "your work" arising out of it or any part of it and included in the "products-completed operation hazard."

42.

In the Lawsuit, Lawton alleges the "Borrow Site Agreement" was entered into for the purpose of creating, managing, operating and maintaining a borrow site on the property.  Lawton now seeks damages from Five Star to remedy, restore, replace, etc. the "borrow" material Five

---

[30] Exclusions n and o of the Umbrella policy.

Star excavated in order to return the property to its "natural condition" and to comply with Cease and Desist Order of the USACOE.[31]

43.

Based upon the allegations in the Lawsuit, to the extent any of the damages alleged against Five Star relate to or "arise out of" remedying, restoring, replacing, etc. the "borrow" material and/or the "work" or "product" of Five Star, pursuant to exclusions 2(k) and/or 2(l) of the EMC policy there is no insurance coverage or protection from EMC.

44.

Additionally, EMC specifically avers there is no insurance coverage or protection pursuant to application of the aforementioned terms, conditions, limitations and exclusions of the EMC policies.

**CLAIM #6**                    *EMC Has No Duty To Defend Or Indemnity Five Star Pursuant To Exclusion 2(m) Of The EMC Policy[32]*

45.

EMC restates and realleges paragraphs 1 through 18 of its Complaint for Declaratory Judgment, as if fully set forth herein.

---

[31] See, Exhibit "A", ¶¶ 4, 12, 17.
[32] Exclusion p of the Umbrella policy.

46.

Exclusion 2(m) of the EMC policy excludes insurance coverage for "property damage" to "impaired property" or "property that has not been physically injured…arising out of a defect, deficiency, inadequacy or dangerous condition" in "your product" or "your work", [or arising out of] a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms."

47.

Lawton seeks damages for breach of contract, costs to evaluate and restore the property, diminution in value of the property, lost revenues, exposure to potential liability to the government and others, attorney's fees and other losses and damages.[33]

48.

Based upon the allegations in the Lawsuit, to the extent Lawton seeks damages for "property damage" to "impaired property" or "property that has not been physically injured" "arising out of a defect, deficiency or inadequacy in "your product" or "your work", or [arising out of] a delay or failure by [Five Star] to perform a contract or agreement in accordance with its terms", pursuant to exclusion 2(m) of the EMC policy there is no insurance coverage or protection from EMC.

---

[33] See, Exhibit "A", ¶¶ 14, 15, 17.

49.

Additionally, EMC specifically avers there is no insurance coverage or protection pursuant to application of the aforementioned terms, conditions, limitations and exclusions of the EMC policies.

**CLAIM #7**                    *EMC Has No Duty To Defend Or Indemnify Five Star Pursuant To Exclusion 2(b) Of The EMC Policy[34]*

50.

EMC restates and realleges paragraphs 1 through 18 of its Complaint for Declaratory Judgment, as if fully set forth herein.

51.

Exclusion 2(b) of the EMC policy excludes insurance coverage for claims "…for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."

52.

In the Lawsuit, Lawton asserts claims for "breach of contract" and it specifically alleges that as a result of Five Star's "breach of contract" it incurred damages.[35]

---

[34] Exclusion b of the Umbrella policy.
[35] See, Exhibit "A", ¶¶ 15, 17.

53.

Based upon the allegations in the Lawsuit, to the extent Lawton makes claims related to "contractual liability", and to the extent those claims fall within exclusion 2(b) of the EMC policy, there is no insurance coverage or protection from EMC.

54.

Additionally, EMC specifically avers there is no insurance coverage or protection pursuant to application of the aforementioned terms, conditions, limitations and exclusions of the EMC policies.

**CLAIM #8**                    *EMC Has No Duty To Defend Or Indemnify Five Star Pursuant To Exclusion 2(f) Of The EMC Policy*[36]

55.

EMC restates and realleges paragraphs 1 through 18 of the Complaint for Declaratory Judgment, as if fully set forth herein.

56.

Exclusion 2(f) of the EMC policy excludes insurance coverage or protection for "property damage" "…arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants"…at or from the premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured, [as well

---

[36] Exclusion i of the Umbrella policy.

as]…any loss, cost or expense arising out of any…request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants."" The EMC policy also excludes insurance coverage for "…any claim or "suit" by or on behalf of any governmental authority for damages because of testing for, monitoring, cleaning up, removing, contaminating, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants.""

57.

Based upon the allegations in the Lawsuit, Lawton seeks damages from Five Star for "restoring the property" and removing all "foreign materials" and "waste." Lawton also alleges Five Star is liable for all damages arising out of the USACOE's Cease and Desist Order, including the claim that the USACOE is now "…requiring that the property be restored to its natural condition."[37]

58.

Based upon the allegations in the Lawsuit, to the extent any damages alleged against Five Star relate to or "arise out of" any "pollutant", or relate to or "arise out of" any "…request, demand, order or statutory or regulatory requirement" to remove, assess, clean-up, etc. any "pollutant", those damages are excluded by Exclusion 2(f) of the EMC policy and there is no insurance coverage or protection from EMC.

---

[37] See, Exhibit "A", ¶¶ 12, 15, 17.

59.

Additionally, EMC specifically avers there is no insurance coverage or protection pursuant to application of the aforementioned terms, conditions, limitations and exclusions of the EMC policies.

**CLAIM #9**          *Alternatively, Only In The Event It Is Determined That EMC Owes Any Insurance Coverage Or Protection To Five Star, The Limits Of EMC's Umbrella Policy Are, At Most, $4,000,000.00*

60.

EMC restates and realleges paragraphs 1 through 18 of the Complaint for Declaratory Judgment, as if fully set forth herein.

61.

EMC issued Commercial Umbrella policies, policy no. 5J3-23-74, to Five Star Industrial, LLC and/or Five S Industrial, LLC for the policy periods 7/10/15 - 7/10/16, 7/10/16 - 7/10/17 and 7/1017 - 7/10/18.[38]

62.

The 2015 - 2016 Umbrella policy provided limits of $4,000,000.00 per occurrence, as did the 2016 - 2017 Umbrella policy. However, upon request made on behalf of Five Star, the 2016 – 2017 Umbrella policy issued to Five S Industrial, LLC was amended on April 13, 2017 and endorsed to increase the limits from $4,000,000.00 to $5,000,000.00.[39]

---

[38] See generally, Exhibits "E", "F" and "G".
[39] See generally, Exhibits "E", "F" and "G".

63.

As alleged in the Lawsuit, Lawton and Five Star received the USACOE's Cease and Desist letter on April 10, 2017, three days prior to the increase in EMC's Umbrella policy limits.[40]

64.

The EMC Umbrella policy specifically provides that insurance coverage is only provided if, prior to the policy period, no insured or any "employee" authorized to give or receive notice of an "occurrence" or claim, knew that "property damage" had occurred, in whole or in part.

65.

Based upon the allegations in the Lawsuit, to the extent any "property damages" "occurred" which could give rise to coverage from EMC to Five Star, which is denied, those "property damages" occurred at the time the USACOE issued its Cease and Desist letter, which was prior to the date the EMC Umbrella policy was amended to increase the limits from $4,000,000.00 to $5,000,000.00.

66.

Moreover, to the extent Five Star, or any "employee" of Five Star authorized to give or receive notice of an "occurrence" or claim, knew of or had notice of any potential "property damage" at issue in the Lawsuit prior to the Umbrella policy being amended on April 13, 2017 and endorsed to increase the limits from $4,000,000.00 to $5,000,000.00, then if EMC provides

---

[40] See, Exhibit "A", ¶¶ 12.

any insurance coverage at all, which is denied, the limits of the insurance coverage provided by EMC under the Umbrella policy are, at most, $4,000,000.00.

67.

Alternatively, EMC specifically avers there is no insurance coverage or protection owed to Five Star whatsoever if evidence shows fraud, deceit, prior knowledge, or other reason as a motive for requesting an increase in the EMC Umbrella policy's limits.

68.

Additionally, EMC specifically avers there is no insurance coverage or protection pursuant to application of the aforementioned terms, conditions, limitations and exclusions of the EMC policies.

**WHEREFORE,** after all legal delays have run and all due proceedings are had, Employers Mutual Casualty Company respectfully prays that there be judgment rendered in its favor and against the Defendants, as outlined above.  EMC also further prays that it be awarded such further relief, legal or equitable, general or specific, as the Court may deem appropriate, including but not limited to an award of the attorney's fees, costs, and disbursements incurred by EMC in this action. EMC reserves its right to amend this Second Amended Complaint for Declaratory Judgment in order to assert new and/or additional Requests for Declaratory Relief as the litigation progresses and additional facts are discovered.

Respectfully submitted:

**DUPLASS, ZWAIN, BOURGEOIS,
PFISTER, WEINSTOCK & BOGART**

*/s/ Joseph E. Bearden, III*
**JOSEPH E. BEARDEN, III (#26188)
NICOLE M. BOYER (#29775)**
Three Lakeway Center, Suite 2900
3838 North Causeway Boulevard
Metairie, Louisiana   70002
Telephone: (504) 832-3700
Fax: (504) 837-3119
Email:  jbearden@duplass.com;
nboyer@duplass.com
**Attorneys for Plaintiff,
Employers Mutual Casualty Company**

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of December, 2018 a copy of the Second Amended

Complaint for Declaratory Judgment Pursuant to 28 U.S.C. §2201 has been served to all

defendants in this action via the Court's CM/ECF System. All counsel of record registered with

the CM/ECF System will receive notice of this filing and may access this filing via the Court's

CM/ECF System.

*/s/ Joseph E. Bearden, III*
**JOSEPH E. BEARDEN, III**